IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| LEONARD LEROY DILLARD, SR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 116-173 |
| | ) | |
| AHMED HOLT, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Petitioner, an inmate at Phillips State Prison in Buford, Georgia, brings the above-captioned petition pursuant to 28 U.S.C. § 2254. Having considered all the relevant pleadings, for the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** the § 2254 petition be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

**I.    BACKGROUND**

This case challenges the validity of Petitioner's conviction for murder, as determined by a jury in Jefferson County, Georgia, after a trial conducted from May 17 through 20, 2011. Dillard v. State, 778 S.E.2d 184, 187 & n.1 (Ga. 2015). The indictment, filed on July 6, 2007, charged Petitioner with one count of malice murder and one count of felony murder. Resp't Ex. 1(a), p. 14. The jury convicted Petitioner on both counts, a verdict which merged into one punishment of life imprisonment for malice murder. Resp't Ex. 1(b), p. 361.

The Georgia Supreme Court provided the following description of facts about the murder based on the evidence offered against Petitioner at trial:

> Appellant and the victim, Sandra Knight, attended a house party on the night of April 13, 2007. They left the party close to midnight, stopped at a drug house to buy crack cocaine, and went to appellant's house. Appellant called 911 a short time later and an ambulance was dispatched to appellant's house. Paramedics found the victim lying in the driveway next to appellant's car. She was unresponsive. Appellant said the victim told him that someone tried to choke her earlier; that she went into the bathroom to use crack; and that when she came out of the bathroom, she went rigid and collapsed. Attempts to revive the victim were unsuccessful and she was declared dead at 1:05 a.m. on April 14. The medical examiner concluded the victim had been strangled to death.
>
> Investigators examined the victim in the hospital. They observed numerous fresh scratches on the victim's throat and neck. Additionally, investigators noticed that the victim's clothing was in disarray in a sexually suggestive manner inconsistent with emergency treatment.
>
> Later, at approximately 4:45 a.m., investigators went to appellant's house. After giving investigators permission to enter, appellant told them the victim showed him the scratches on her neck at the party and said she was choked by someone (she would not say who) in Bartow, Georgia.
>
> Investigators canvassed the area for witnesses who had seen appellant and the victim the previous night. Seven witnesses said the victim was happy, spoke normally, and had no visible injuries on her neck at that time.
>
> The following day, investigators interviewed appellant and he essentially repeated his account of the night's events. After yet another day, investigators interviewed appellant for a third time. In that discussion, appellant said he lied about the scratches on the victim's neck, adding that when he and the victim were leaving his house, two unknown men drove up;

> and that one of the men approached the victim with a gun, began choking her and said she would not steal from him anymore. At trial, appellant told yet another story, similar to the one he originally told investigators.

Dillard, 778 S.E.2d at 187.

Petitioner filed a motion for new trial on June 15, 2011, and a brief in support of the motion on November 4, 2013. Resp't Ex. 1(b), pp. 363, 371-96. One of the grounds raised in the motion for new trial was that the trial court erred in denying the motion to dismiss on speedy trial grounds, a motion filed on February 2, 2011 – approximately three and one half months prior to the trial. Id. at 315-19; 393-95. The trial court denied the motion for new trial. Id. at 426-55. As to the speedy trial issue, the trial court found the forty-six month delay between indictment and trial sufficiently long to be "presumptively prejudicial." Id. at 449. However, after applying the four-factor balancing test of Barker v. Wingo, 407 U.S. 514 (1972), and Doggett v. United States, 505 U.S. 647 (1992), as set forth in Ruffin v. State, 663 S.E.2d 189, 195 (Ga. 2008), the trial court determined the factors weighed against Petitioner, and thus, the motion to dismiss was properly denied. Id. at 450-54.

Petitioner then filed a direct appeal to the Supreme Court of Georgia, raising four errors:

(1) The trial court erred in denying [Petitioner's] motion to suppress his statements.

(2) The trial court erred in admitting evidence of similar transactions.

(3) The evidence was insufficient to warrant a conviction for the crimes charged.

(4) The trial court erred in denying [Petitioner's] motion to dismiss on the issue of speedy trial.

3

Resp't Ex. 5, p. 7. On October 5, 2015, the Supreme Court of Georgia rejected Petitioner's contentions and affirmed the judgment against him. See Dillard, 738 S.E.2d at 191.

On September 29, 2016, Petitioner submitted a letter to the Clerk of Court for the Northern District of Georgia, which the Clerk construed as a complaint. There was no filing fee or motion to proceed *in forma pauperis* ("IFP") submitted with the letter, but a case was opened in Petitioner's name. Dillard v. Unnamed Defendant, 1:16-cv-03674 (N.D. Ga. Sept. 29, 2016). On October 11, 2016, United States Magistrate Judge Justin S. Anand reviewed the letter and determined Petitioner was seeking to challenge two separate convictions, one in the Superior Court of Jefferson County for murder and the other in the Superior Court of Emanuel County for voluntary manslaughter. (Doc. no. 2.) As both counties are located within the jurisdiction of the Southern District of Georgia, Magistrate Judge Anand transferred the case to this District. (Id.)

On October 17, 2016, this Court entered an Order explaining to Petitioner he had twenty-one days to amend the filing upon which the Clerk in the Northern District opened this case by submitting the federal habeas corpus form petition provided by the Clerk of Court and specifying each ground on which he seeks relief on the Jefferson County conviction and the facts that support each ground. (See doc. no. 5.) The Court cautioned Petitioner if he failed to submit an amended petition, his case may be dismissed. (Id.) When Petitioner did not respond as instructed, the Court recommended the case be dismissed without prejudice because Petitioner's failure to respond left the Court with the prospect of a stagnant case that could not move forward. (See doc. no. 6.)

4

Prompted by the Court's recommendation for dismissal, Petitioner submitted a habeas corpus petition. (Doc. no. 8.) Upon review of the amended petition filed on December 5, 2016, the Court provided Petitioner fourteen additional days to clarify his federal claim(s) and explained that if no additional amendment were filed, the Court would proceed as though the issue identified from his direct appeal on page three of the amended petition is the one issue upon which he seeks federal relief. (See doc. no. 10.) That one issue states: "I sat at the Jefferson County Jail (L.E.C.) fifty (50) months before I went to trial and suffered by not receiving the adequate mental health treatment while at the jail." (Doc. no. 3.) Petitioner did not further amend his petition, and on January 3, 2017, the Court directed Respondent to file a response to Petitioner's one issue. (Doc. no. 11.) The January 3rd Order also informed Petitioner and Respondent of a sixty-day deadline for submitting their briefs of law. (Id. at 2.)

Respondent answered the petition, and after receiving an extension of time to do so, submitted the information required by Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. (Doc. nos. 14-20.) On May 5, 2017, the Clerk of Court docketed a brief from Petitioner in which he copied portions of the brief submitted on his behalf to the Georgia Supreme Court and of the trial court's order denying the motion for new trial. Cf. doc. no. 23 with Resp't Ex. 1(b), p. 450 & Resp't Ex. 5, p. 7. However, Petitioner also alleged for the first time that he believes he has a claim for ineffective assistance of counsel because his trial counsel should have requested a mistrial for some unidentified reason. (Doc. no. 23, p. 6.)

5

## II. STANDARD OF REVIEW

Under § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has characterized § 2254(d) as "part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington v. Richter, 562 U.S. 86, 103 (2011). Accordingly, § 2254(d) creates a "difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (citations omitted).

In Brown v. Payton, 544 U.S. 133, 141 (2005), the Supreme Court explained the difference between the "contrary to" and "unreasonable application" clauses in § 2254(d)(1) as follows:

> A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. A state-court decision involves an unreasonable application of this Court's clearly established precedents if the

state court applies this Court's precedents to the facts in an objectively unreasonable manner.

Id. (internal citations omitted).

Thus, under § 2254(d)(1), it is not enough to demonstrate that a state court's decision is wrong; "even clear error will not suffice." White v. Woodall, 572 U.S. -, 134 S. Ct. 1697, 1702 (2014). Rather, the habeas petition must show the state court decision was "objectively unreasonable." Wiggins v. Smith, 539 U.S. 510, 520-21 (2003); see also Woods v. Donald, 575 U.S. -, 135 S. Ct. 1372, 1376 (2015) (requiring a petitioner to show the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement"). A showing that the state court's determination was unreasonable is a substantially higher threshold than whether it was correct. Reed v. Sec'y, Fla. Dep't of Corr., 767 F.3d 1252, 1260-61 (11th Cir. 2014); Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1325 (11th Cir. 2013). In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen, 563 U.S. at 181. Moreover, under AEDPA's highly deferential standard of review for state court factual determinations, a federal habeas court may only grant relief if a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

Additionally, § 2254(e)(1) requires the Court "to presume the correctness of state courts' factual findings" unless the habeas petitioner rebuts that presumption "with clear and convincing evidence." Nejad v. Att'y Gen., State of Ga., 830 F.3d 1280, 1289 (11th Cir.

2016) (citing Schriro v. Landrigan, 550 U.S. 465, 473-74 (2007)); see also Reese v. Sec'y, Fla. Dep't of Corr., 675 F.3d 1277, 1287 (11th Cir. 2012) ("In a habeas proceeding, our review of findings of fact by the state court is even more deferential than under a clearly erroneous standard of review."). "The Supreme Court has not yet defined § 2254(d)(2)'s precise relationship to § 2254(e)(1). . . . Whatever that precise relationship may be, a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Tharpe v. Warden, 834 F.3d 1323, 1336 (11th Cir. 2016) (citing Wood v. Allen, 558 U.S. 290, 301 (2010)), *petition for cert filed*, Apr. 14, 2017 (No. 16-8733).

## III. DISCUSSION

### A. Petitioner's Belated and Conclusory Claim of Ineffective Assistance of Counsel Is Not Properly before the Court.

In his reply brief, Petitioner asserts for the first time that he believes he has an ineffective assistance of counsel claim based on his trial counsel's failure to request a mistrial. (Doc. no. 23, p. 6.) This claim is not properly before the Court for several reasons. First, the Court gave Petitioner's multiple opportunities to identify his federal habeas corpus claims, and specifically warned him that the case would proceed only on the one claim identified on page three of his amended petition regarding an alleged speedy trial violation. (Doc. no. 11, p. 1.) Even then, the Court allowed Petitioner another sixty days from January 3, 2017, to file a supporting brief, (id. at 2), but Petitioner did not submit anything in response.

Second, the Court need not consider claims that are raised for the first time in a reply brief. Herring v. Sec'y, Dep't of Corr., 397 F.3d 1338, 1342 (11th Cir. 2005). If Petitioner wanted to add another claim, the Federal Rules of Civil Procedure require that at this point in the case, he file a motion to amend. See Fed. R. Civ. P. 15; Fed. R. Civ. P. 81(a)(4) (explaining Federal Rules of Civil Procedure apply in habeas corpus proceedings "to the extent that the practice in those proceedings: (A) is not specified in a federal statute, the Rules Governing 2254 Cases, or the Rules Governing Section 2255 Cases; and (B) has previously conformed to the practice in civil actions."). As Petitioner identifies no basis upon which he believes a mistrial was warranted, there are no factual or legal arguments for the Court to evaluate to determine whether the addition of another claim is appropriate. Nor would the Court be able to determine whether an additional claim would be timely under AEDPA's one-year statute of limitations. See 28 U.S.C. § 2244(d).

Moreover, even if Petitioner had properly sought permission to add an ineffective assistance of counsel claim, he never raised such a claim in state court. Absent a showing of cause and prejudice to correct a fundamental miscarriage of justice, a claim not exhausted in the state courts cannot form the basis for federal habeas corpus relief. See Jones v. Campbell, 436 F.3d 1285, 1304 (11th Cir. 2006); see also Henderson v. Campbell, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts."); Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 457 (11th Cir. 2015) "Ultimately, 'to exhaust state remedies fully[,] the petitioner must make the state court aware that the claims asserted present federal constitutional issues.'").

In sum, as there is no ineffective assistance of counsel claim properly raised, the Court turns its attention to the one ground for relief raised by Petitioner in his federal habeas corpus petition.

**B.     Applying AEDPA Deference to the Claim Previously Rejected by the State Court, Federal Habeas Relief Is Not Warranted with Respect to Petitioner's Speedy Trial Claim.**

Petitioner raised his speedy trial argument on direct appeal as follows: "The trial court erred in denying [Petitioner's] motion to dismiss on the issue of speedy trial." Resp't Ex. 5, p. 7. In support of his claim, Petitioner argued: (1) the delay between his arrest and trial was presumptively prejudicial; (2) the blame for the delay rested more heavily with the State than with the defense; (3) the lack of a statutory speedy trial demand did not diminish his constitutional right to a speedy trial; and (4) he suffered substantial prejudice by the delay, including an inability to locate witnesses and suffering during pretrial incarceration in not receiving inadequate mental health treatment." Id. at 28-30. Applying Barker v. Wingo, 407 U.S. 514 (1972), and Doggett v. United States, 505 U.S 647 (1992), the Georgia Supreme Court determined the delay in bringing Petitioner to trial did not violate his constitutional right to a speedy trial.

In analyzing whether a defendant's constitutional right to a speedy trial has been violated, a court must consider four factors set forth by the United States Supreme Court in Barker, *supra*: "(1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of the speedy trial right; and (4) the prejudice to the defendant." United States v. Ingram, 446 F.3d 1332, 1336 (11th Cir. 2006) (internal citations omitted). Once a court determines there has been presumptively prejudicial delay, then the final three factors are

10

weighed. Id. The Supreme Court cautioned that none of the four factors have "talismanic qualities," but courts must "engage in a difficult and sensitive balancing process." Barker, 407 U.S. at 533.

As to the reason for the delay, different weights are assigned to different reasons. Id. at 531. For example, deliberate delay to harm the defense weighs heavily against the government, but a more neutral reason like negligence or an overcrowded court docket weighs less heavily, but nonetheless against the government. Id. Whether and how the assertion of the speedy trial right is made carries strong evidentiary weight, and "failure to assert the right will make it difficult for a defendant to prove he was denied a speedy trial." Id. at 531-32. The last factor, prejudice to the defendant, "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect." Id. at 532. The Supreme Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Id.

In conducting its review of the weighing of the four Barker factors, the Court is also guided by AEDPA's mandate that factual determinations made by a state court are presumptively correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Tharpe, 834 F.3d at 1336.

As reviewed by the Georgia Supreme Court, the trial court applied the four-factor, balancing test from Barker and Doggett, *supra*. See Dillard, 778 S.E.2d at 189-91. The

Supreme Court concluded the trial court properly determined a four-year delay was uncommonly long and weighed in favor of Petitioner's speedy trial claim. Id. at 189. However, the Supreme Court concluded the trial court erred in weighing the second factor, the reason for the delay, as neutral because all but nine months of the delay had been caused by a lack of judicial resources and budgetary shortfalls.[1]  Id. at 190.  That factor should have been weighed lightly against the government. Id. As explained by the Supreme Court, an overcrowded docket, the failure to provide sufficient court personnel, mere convenience to prosecution, or the desire to avoid expense must be counted against the government, "though less heavily than delay designed to sabotage the accused's case." Id. (citations omitted).

Turning to the third factor, assertion of the speedy trial right, the Supreme Court concluded the trial court properly weighed it against Petitioner because he did not assert his right to a speedy trial until three months prior to trial by filing a motion to dismiss. Id. Indeed, at the hearing on the motion to dismiss, defense counsel withdrew the argument from the written motion that prior counsel had immediately filed a demand for a speedy trial because the record revealed no such motion had been filed. Resp't Ex. 2(e), p. 15. As the United States Supreme Court explained in Barker, whether and how a defendant asserts his speedy trial right is entitled to "strong evidentiary weight" during the balancing test. 407 U.S. at 531-32. Thus, according to the Supreme Court's balancing, through three factors, the

---

[1] Even as to the nine month delay caused by an interlocutory appeal by the State, the trial court found no deliberate attempt to delay or hamper the defense. Dillard, 778 S.E.2d at 190 n.7; see also Resp't Ex. 1(b), p. 452 (attributing no delaying tactic or motive to State in filing appeal). Defense counsel also acknowledged at the hearing on the motion to dismiss that as to delay, "[T]he State is not overtly to blame for anything." Resp't Ex. 2(e), p. 18; see also id. at 23-24 (conceding on direct questioning by court that there was no delay motive in filing appeal).

first weighed in favor of Petitioner, the second weighed lightly against the State, and the third factor weighed against Petitioner. Dillard, 778 S.E.2d at 190.

Turning to the fourth factor, prejudice to Petitioner, the Supreme Court concluded it was properly weighed against Petitioner. Id. Petitioner had not shown the delay interfered with his ability to present evidence strengthening his defense. Id. One potential witness had died before trial, but the Petitioner had not disclosed what his testimony would have been such that any determination could have been made concerning prejudice. Id. In fact, at the hearing on the motion for new trial, defense counsel explained the delay had not impacted the defense's use of that witness because counsel did not realize the witness had died. Resp't Ex. 2(e), p. 36. As to the remaining two prejudice factors, oppressive pretrial incarceration and anxiety and concern of the accused, Barker, 407 U.S. at 532, the Georgia Supreme Court rejected the claim Petitioner now makes that "he suffered from a lack of mental health treatment and that his mental health deteriorated during his incarceration." Dillard, 778 S.E.2d at 190. Rather, the Supreme Court concluded Petitioner "received regular, appropriate treatment during his incarceration, that his mental health was actually less stable before he was incarcerated, and that he could not point to any harm other than the incarceration itself." Id.

Indeed, the record contains the judicial order of April 4, 2008 for a mental evaluation and the resultant Forensic Psychological Evaluation. Resp't Ex. 1(a), pp. 113-20. The Evaluation states that according to jail records, after his arrest in 2007, Petitioner was diagnosed with depression and prescribed the anti-depressant Prozac, which Petitioner reported improves his mental state. Id. at 119. Although "a little depressed" during the first

13

examination, Petitioner described his mood as "good" during the second examination, and he denied feelings of hopelessness, worthlessness, or a desire to harm himself. Id. When specifically questioned at the hearing on the motion to dismiss about the allegation Petitioner was not receiving adequate mental health treatment, counsel responded: "But it's my understanding from following up with the jail staff that he is being given his medication and that he is getting all the treatment that is available through the jail." Resp't Ex. 2(e), p. 35. Petitioner's allegation that he was prejudiced by not receiving adequate mental health treatment at the jail while awaiting trial is not supported by the record. What the record does reveal is that this argument has been rejected by the state courts on three different occasions. Dillard, 778 S.E.2d at 190 ("[Petitioner's] claim that he suffered from a lack of mental health treatment and that his mental health deteriorated during his incarceration cannot sustain scrutiny."); Resp't Ex. 1(b), pp. 355-56 (order denying motion to dismiss) and pp. 453-54 (order denying motion for new trial).

In sum, the Georgia Supreme Court determined one of four factors weighed in Petitioner's favor, two weighed against Petitioner, and only one factor weighed lightly against the State. Dillard, 778 S.E.2d 190. Thus, the Supreme Court concluded that despite the trial court improperly weighing the cause-of-the-delay factor as neutral, rather than lightly against the State, no constitutional speedy trial violation occurred because of Petitioner's "long delay in asserting his right to a speedy trial and his failure to demonstrate prejudice." Id. at 191.

Petitioner has not presented any evidence—much less clear and convincing evidence—to rebut the presumptive correctness of the state court's factual determinations.

14

Likewise, Petitioner fails to explain how, let alone establish, the Supreme Court unreasonably applied <u>Barker</u> and <u>Doggett</u> in reaching its conclusion that no constitutional speedy trial violation occurred. Accordingly, Petitioner is not entitled to federal habeas corpus relief.

**IV.  CONCLUSION**

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the § 2254 petition be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 24th day of May, 2017, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA